FILED
2007 May-08 PM 03:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED
2007 MAY -7 PM 12:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ALABAMA
Southern Division

| | |
|---|---|
| JOHN DOE, an individual,<br>Plaintiff,<br><br>v.<br><br>The UNITED STATES AIR FORCE, a government agency d/b/a USAF XOI-RE, or d/b/a The AIR INTELLIGENCE AGENCY, a/k/a A.I.A.;<br><br>SECRETARY OF DEFENSE, DONALD RUMSFELD, in his official capacity, and/or his successor, ROBERT M. GATES in his official capacity<br><br>SECRETARY OF THE AIR FORCE, MICHAEL W. WYNNE, in his official capacity<br><br>CHAIRMAN OF THE JOINT CHIEFS OF STAFF, GENERAL PETER PACE, in his official capacity,<br><br>AIR FORCE CHIEF OF STAFF, GENERAL T. MICHAEL MOSLEY, in his official capacity,<br><br>COMMANDER OF U.S. AIR FORCE/XOI, EXECUTIVE OFFICE OF INTELLIGENCE, LT. GENERAL DETULA, in his official capacity,<br><br>COMMANDER OF AIR RESERVE PERSONNEL CENTER,<br>MAJOR GENERAL F. PRZYBYSLAWSKI, in his official capacity,<br><br>COMMANDER OF U.S. EUROPEAN COMMAND, GENERAL JAMES L. JONES, in his official capacity, | CASE NO. _____<br><br>CV-07-P-0842-S |

Doe v. United States Air Force et al    Doc. 1

```
CHIEF OF PERSONNEL FOR THE          )
US AIR FORCE INTELLIGENCE, d/b/a    )
AIR INTELLIGENCE AGENCY, a/k/a      )
USAF/XOI-RE                         )
CHERYL A. KERWIN, in her official   )
capacity, and/or her successor,     )
                                    )
        DEFENDANTS.                 )
```

# COMPLAINT

## INTRODUCTION

1. Plaintiff, Mr. John Doe was a former "Intelligence Advisor" or Sr. Intelligence Analyst for U.S. Special Forces, also known as the "Green Berets".

2. In 1999, Mr. John Doe focused his skills on military intelligence involving Usama Bin Laden (hereinafter referred to as "Bin Laden") and Saddam Hussein. It was his intelligence analysis on Bin Laden and Saddam Hussein which led to arbitrary and capricious actions by his superiors that have resulted in this lawsuit.

3. On or about March 2001 and prior to the terrorist attacks on New York City's Twin Towers on 9/11, Mr. John Doe reported his intelligence analysis and personal concerns over possible terrorist attacks by Bin Laden inside the United States to the Air Intelligence Agency and other intelligence agencies.

4. Days after 9/11, Mr. John Doe contracted with the U.S. Air Force Air Intelligence Agency to serve as an Air Force Intelligence Officer/Intelligence Analyst. This occurred quickly after 9/11 because his superiors in the Air Intelligence Agency recognized the validity of his early warning. Mr. John Doe believed he had a promising future as an Intelligence Analyst for the government. He signed a contract with the military based upon a promise that he would be commissioned at an officer's pay grade and would serve in his capacity as an Intelligence Analyst/Intelligence Officer.

5. During this time, Mr. John Doe's intelligence analysis was used in part; "cherry-picked", misinterpreted, and manipulated most likely to either support preconceived ideas regarding the true dangers of terrorist activities or policies already established by higher ups in the chain of command. It soon became apparent that the Air Force (d/b/a the Air Intelligence Agency) was moving toward a cover-up of the early warning offered by the analysis which made the continued presence of the analyst a potential embarrassment in regards to the misuse of that intelligence.

6. Mr. John Doe was retaliated against and threatened with additional retaliation if he testified or provided evidence about his early warning and how he was being treated by the Air Force to Congress at the 9/11 Commission in clear violation of 10 U.S.C.A. § 1034 which states: "Restricting communications with Members of Congress and Inspector General prohibited".

7.  On 2/7/03, the U.S. Air Force moved to cover up the information Mr. John Doe had offered, as well as his status/relationship with the military when he was informed that his SCI Security Clearance and schools would not be funded because of his unclassified intelligence analysis on Bin Laden and Saddam Hussein. The failure to fund his security clearance and training effectively made it impossible for Mr. John Doe to do his assigned job. Still, he was being held under contract and without pay by the U.S. Air Force. Thus, Mr. John Doe was being wrongfully terminated and his contract breached because of his unclassified intelligence analysis on Bin Laden and Saddam Hussein.

8.  The "JOHN DOE" Plaintiff is a former intelligence analyst. The nature of this petition is expected to be of great interest among the news media. He fears that if his identity is disclosed at this point in time, harassment by the news media, and other individuals not involved in this case will become uncontrollable. Therefore, the Plaintiff requests the protection of this Honorable Court from said harassment for at least the first sixty (60) days following the filing of this petition.

In addition, the Plaintiff is open to a settlement in this matter, and disclosure of his identity may hamper or make impossible such negotiations as may occur prior to this case reaching trial. By protecting the identity of the Plaintiff, this Honorable Court will be encouraging a settlement since it is expected that the Defendants will likely prefer that there be no communication between the Plaintiff and the news media.

## JURISDICTION STATEMENT

9.  This action is properly before this Court because there is no existence of complete diversity of citizenship between Plaintiff and Defendants. The Defendants do business in St. Clair and Jefferson County and the majority of the actions took place while Plaintiff was physically in St. Clair and Jefferson County. This Court has jurisdiction over this matter due to the fact that the Plaintiff does, and at all times mentioned in this instrument was, residing in St. Clair County, Alabama.

10. Defendants are, and at all times mentioned in this instrument were, doing business in St. Clair County and Jefferson County, Alabama.

11. Mr. John Doe is a resident of Alabama and is over the age of nineteen (19) years.

12. All administrative remedies have been exhausted. Therefore, since all Department of Defense and U.S. Air Force procedures relating to submission of grievances for consideration and resolution have been followed by the Plaintiff and proven to be futile, the Federal Civil Courts are the Plaintiff's last hope for a resolution to the injustices committed against him.

## ALL ADMINISTRATIVE REMEDIES EXHAUSTED

13. Plaintiff adopts paragraphs one through eleven as if set forth fully herein.

14. Mr. John Doe REGRETS that he has to take such legal action but has no other options because the Department of Defense, the U.S. Air Force, and political

leaders have failed to remedy the situation and most likely have intentionally subverted the process because of the nature of the matter.

15. This action requires Plaintiff to exhaust all administrative remedies, which he has done with the United States Air Force because Plaintiff's legal actions evolve out of his contract employment with the stated U.S. government agency. Specifically, this legal action stems from Mr. John Doe's intelligence analysis/intelligence reports on Bin Laden and Saddam Hussein and the actions or lack of actions taken by the U.S. Air Force because of this work.

16. On or about 2/7/03, Plaintiff was notified by the Chief of Personnel of the U.S. Air Force XOI-RE (hereinafter referred to as USAF XOI-RE and previously known as the Air Intelligence Agency, a/k/a A.I.A.) that the contract between Mr. John Doe and the U.S. Air Force would not be honored, and therefore breached, because of Mr. John Doe's intelligence analysis/intelligence reports on Bin Laden and Saddam Hussein. Therefore, the USAF XOI-RE was well informed of the situation and failed or refused to resolve or remedy the legal issues involved in this matter.

17. Between the dates of 2/7/03 and 3/10/05, Plaintiff well informed his Chain-of-Command at European Command (a/k/a EUCOM) of the situation. Initially, European Command brought a Brigadier General in to resolve the situation. However, in the end, European Command failed to resolve or remedy the legal issues involved in this matter.

18. On or about 3/25/04, Mr. John Doe filed a Congressional Complaint on the issues involved in this matter while at the same time complying with a request for information from the Congressional 9/11 Committee. The Honorable Congressman Spencer T. Bachus sponsored this Congressional Complaint. The Honorable Congressman Bachus quickly informed Major General Leroy Barnidge of the situation on 3/26/04. Major General Barnidge was stationed with the U.S. Air Force at the Pentagon and was the Director for the Office of Legislative Liaison at the time. Major General Barnidge failed to resolve or remedy the legal issues involved in this matter. However, in the U.S. Air Force reply it was recommended that Mr. John Doe: (1) notify the Inspector General and (2) write and provide statements to the Air Force Board for Corrections of Military Records (AFBCMR).

19. Approximately between the dates of 3/25/04 and 11/01/04, Plaintiff attempted to get written statements from key individuals involved in the issues of this case as per the Air Force Board for Corrections of Military Records recommendations that written statements be provided. Mr. John Doe was unable to get statements from any individual involved in this matter because, as he was informed, someone high in the Chain-Of-Command was calling and e-mailing individuals to not provide any written statements on this matter. This is sometimes referred to as Command Influence or in this case Undue Command Influence. This prevented further actions in this direction to resolve or remedy the legal issues involved in the matter.

20. On or about 11/1/04, Plaintiff filed a complaint with the Department of Defense Inspector General and addressed to the Honorable Inspector General Joseph E. Schmitz and then Secretary of Defense Donald Rumsfeld. No case number was given and no one contacted or responded to Plaintiff's complaint. Plaintiff followed up with a phone call, without success. In the end, Mr. John Doe later learned from U.S. Senator Jeff Sessions' office that his I.G. Complaint was sent to the office of the Secretary of Defense, Donald Rumsfeld, where the investigation was arbitrarily and capriciously stopped. Therefore, the Secretary of Defense, Donald Rumsfeld, failed to resolve or remedy the legal issues involved in this matter.

21. On or about 12/9/04, Plaintiff filed a second Congressional Complaint on the issues involved in this matter. The Congressional Complaint was sponsored by the Honorable Senator Jeff Sessions a member of the Armed Services Committee. The investigation started very slowly (after 5 or 6 months) and ended with a report from the Department of Defense Inspector General dated 07/27/05. Summarized, this report states that the Department of Defense I.G., U.S. Air Force I.G., and U.S. Air Force Office of Special Investigations, superficially looked into this matter and concluded that "there was no basis for the allegations". However, all of these investigators failed to contact relevant witnesses or even contact the Plaintiff. Proper investigation would have resulted in the discovery of the cover-up. Failure to properly investigate resulted in these investigators overtly or through incompetence facilitating the cover-up. Therefore, the Department of Defense I.G. failed to resolve or remedy the legal issues involved in this matter.

22. Mr. John Doe applied to the Department of the Air Force Review Board as instructed by the Department of Defense. On 02/16/06, the Department of the Air Force Review Board arbitrarily and capriciously returned the entire application stating they could only review one of the twelve (12) issues. They go on to say that the other matters "must be pursued **outside this administrative review forum**". Once again, Department of the U.S. Air Force failed to resolve or remedy the legal issues involved in this matter.

23. Therefore, Plaintiff shows that "All Administrative Remedies have been Exhausted".

## STATEMENT OF FACTS.

24. Mr. John Doe trained at Ft. Knox and was subsequently trained as an intelligence analyst at Ft. Bragg. Mr. John Doe eventually attained the rank of Sergeant.

25. Mr. John Doe served in the capacity of the Senior Intelligence Analyst to the Special Forces (the "Green Berets") from 02/20/91 to10/09/92. Notably, Mr. John Doe served in this capacity during the Desert Shield/Desert Storm campaign.

26. In his capacity as Senior Intelligence Analyst, Mr. John Doe led the All Source Production Center which produced intelligence reports from battlefield intelligence, human intelligence, signal intelligence, photo intelligence, and counter-

intelligence. Mr. John Doe held and maintained a Top Secret/SBI security clearance while in the Army.

27. During Desert Shield/Desert Storm, in or about April of 1991 Mr. John Doe was ordered to travel to the Washington, D.C. area and meet with the Chief of Staff of the Army, General Carl E. Vuono. At this location, Mr. John Doe participated in a three day round-table discussion on the Arab-Israeli conflict and the ongoing Gulf War. Mr. John Doe later returned to his duties as Senior Intelligence Analyst and briefed General Stiner, Commander of the 18th Airborne Corps. Mr. John Doe demonstrated his unique skills as an intelligence analyst during this period. (See Exhibit "B" attached hereto, a true and correct copy of a commendation dated July 2, 1991 by SFC Steven Lee.)

28. In or about late 1999, Mr. John Doe identified Bin Laden and his terrorist organization, Al-Qaeda, as a major threat to the United States.

29. In or about early 2000, Mr. John Doe began conducting analysis on possible connections between Bin Laden and Saddam Hussein, the then president of Iraq, and the threat that they might pose if they allied themselves.

30. By 2001, Mr. John Doe had found a position with the Air Intelligence Agency (A.I.A.) and the Joint Analysis Center (J.A.C.) of European Command. However, Mr. John Doe had not yet entered into a contract with them because of the U.S. Air Force's slow and inefficient process.

31. In early 2001, Mr. John Doe became very concerned about the likelihood of Al-Qaeda attacks in the United States. Additionally, Mr. John Doe became very concerned with his findings as to the **possible** relationship between Bin Laden and Saddam Hussein, which he reported to the A.I.A and the J.A.C, and to which the U.S. Air Force would **wrongfully** and continuously refer to later as **"the link between Bin Laden and Saddam Hussein"**.

32. After the September 11, 2001 terrorist attacks on the World Trade Center and the Pentagon, Mr. John Doe reiterated in a report dated September 14, 2001, that it was extremely likely that the 9/11 attacks were orchestrated by Bin Laden and Al-Qaeda. He also reiterated his concern about a **possible** relationship between Bin Laden and Saddam Hussein. This report was provided to Senator Richard Shelby, the then Chairman of the Select Committee on Intelligence, as well as the individuals/agencies to whom Mr. John Doe felt a responsibility to communicate.

33. On September 21, 2001, Mr. John Doe contracted with the A.I.A. and the U.S. Air Force to conduct intelligence analysis work for the J.A.C. at European Command. His enlistment was for a term of 6 years (See Exhibit "A" attached hereto, a true and correct copy of Mr. John Doe's enlistment papers).

34. The U.S. Air Force put Mr. John Doe on "ice" between 09/21/01 and 02/07/03.

35. On or about February 7, 2003, the Chief of Personnel, Chief Cheryl A. Kerwin, at A.I.A. (now known as Air Force XOI-RE) refused to fund Mr. John Doe's security clearance and his military schools.

36. When Mr. John Doe asked Kerwin for a reason as to why she was refusing to fund his security clearance and schooling for his commission and intelligence training so that he might live up to his contractual agreement, Kerwin accused Mr. John Doe of a "serious breach of intelligence.". A breach of intelligence is a felony, an accusation which carried an implied threat of prosecution since Chief Kerwin wrongfully accused Mr. John Doe of using classified material in his analysis of Bin Laden and Saddam Hussein.

37. Kerwin told Mr. John Doe that he would be involuntarily removed and dishonorably discharged from his position if he did not sign a Form 1288 (request to be re-assigned). When Mr. John Doe asked who had made this decision, Kerwin stated that this was a joint decision between her and Mr. Neil Green, GG-14 the Technical Director and that it had been discussed with Mr. Coop with European Command and Colonel O'Bray with European Command. Chief Kerwin also said that Colonel Les Walraven (Mr. John Doe's Supervisor) may have been informed, although she was not directly involved in that communication.

38. Subsequent to this conversation, Mr. John Doe enlisted Col. Walraven's support in resolving the situation through the chain-of-command at European Command. Mr. John Doe spoke with Col. Walraven regarding the matter. After the conversation with Mr. John Doe, Col. Walraven then contacted Brigadier General Mungenast to intervene on Mr. John Doe's behalf.

39. However, despite General Mungenast's attempt to resolve the situation, and in a subsequent conversation with Kerwin, it became clear to Mr. John Doe that his security clearance and schools would not be funded and that he would be dishonorably discharged if he did not sign the Form 1288. On or about 03/09/03, he did sign the Form 1288 but he **specifically reserved any and all remedies available to him in a court of law**.

40. On or about February, 2004, Mr. John Doe began seeking legal counsel to help clear his good name. An attorney was referred and the attorney initiated a call to Mr. John Doe. The attorney, Mr. Stripling, told Mr. John Doe that he had worked with him in the Special Forces. An appointment was set to meet and discuss Mr. John Doe's situation.

41. On or about 02/06/04, Mr. John Doe met with Stripling concerning his case against the U.S. Air Force and whether he should contact the 9/11 Commission. At that meeting, Stripling became keenly interested in Mr. John Doe's documentation and,

when pressed for his opinion as to the viability of any action against the government, Stripling told Mr. John Doe that he should not sue the Air Force and also that he should not testify to the 9/11 Commission of the United States Congress.

42. Stripling then identified himself as Colonel Stripling with the Judge Advocate General Corps of the U.S. Air Force. When Mr. John Doe was told this, he expressed that it was clear that Stripling had a serious conflict of interest and then demanded Stripling return his documents to him.

43. Stripling then asked Mr. John Doe if he had read the Patriot Act, to which he answered that he had not. Stripling "threatened" Mr. John Doe that ..."if you testify, provide evidence to the 9/11 Committee or bring legal action against the U.S. Air Force, you will be arrested under the Patriot Act and sent to Guantanamo Bay."

44. On or about February, 2004, Mr. John Doe was contacted by Sam Brinkley of the Congressional 9/11 Commission staff, who asked Mr. John Doe to provide the names of his intelligence reports. Mr. John Doe refused to hand over the requested information because of the threats made against him as set forth in paragraphs 35, 36, and 42 above.

45. On or about March, 2005, Mr. John Doe received orders from the U.S. Air Force to report to Maxwell Air Force Base for one day on May 21, 2005. Mr. John Doe responded that it was his opinion that he did not have to comply with this Order as the Air Force had breached his contract. Mr. John Doe demanded that an investigation into the matter be conducted, and upon information and belief, an investigation was initiated by Senator Jeff Sessions and then turned over to the Department of Defense.

46. On May 21, 2005, Mr. John Doe reported to Maxwell as ordered, and at which time he informed Captain Cannon, the officer in charge, of the circumstances surrounding these orders. Mr. John Doe demanded that he be allowed to leave as he felt he was being "falsely imprisoned." Captain Cannon stated that "Maxwell did not want any part of this fiasco" and released Mr. John Doe, but not until six hours of his time had been wrongfully appropriated. Mr. John Doe was later ordered to report to Dobbins Air Force Base on July 18, 2006.

## COUNTS

### COUNT ONE – WRONGFUL TERMINATION

47. Mr. John Doe's employment with the U.S. Air Force was wrongfully terminated when his Constitutional rights were violated and he was falsely accused of improper use of classified materials. Additionally, Mr. John Doe was wrongfully terminated based upon his communications with the Congressional 9/11 Commission; in clear violation of 10 U.S.C.A. § 1034 which states: "Restricting communications with Members of Congress and Inspector General is prohibited."

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff demands judgment against the United States Air Force in the amount of $ 2,861,300 as compensatory damages for their wrongful termination of his employment contract.

### COUNT TWO – MATERIAL BREACH OF CONTRACT

48.     The United States Air Force materially breached its contract with Mr. John Doe by failing to fund his required security clearance and his required schools which were absolutely necessary before he could perform his duties. As such, Mr. John Doe was no longer able to perform under his contract as an Intelligence Analyst.

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff demands judgment against the United States Air Force in the amount of $726,240 as compensatory damages for their willful and material breach of the contract.

### COUNTS THREE, FOUR, FIVE, SIX AND SEVEN– VIOLATION OF DUE PROCESS AND RIGHT TO AN ATTORNEY

49.     Chief Kerwin, Chief of Personnel for Air Force Intelligence, took action in her official capacity to breach Mr. John Doe's contract

50.     Breaching Mr. John Doe's contract is the harshest form of "Involuntary Discharge," which action is governed by U.S. Air Force Regulation AFI36-3208 Chapter 6.

51.     The Air Intelligence Agency failed to follow these mandatory regulations thus acting in a manner that denied Mr. John Doe due process. Specifically, Chapter 6, Section 2.2 **requires** a board hearing if any one of the following is met: (1) the respondent is an NCO (see 6.2.2.1); (2) respondent has more than 6 years of service (see 6.2.2.2); (3) discharge in the interest of national security (see 6.2.2.5).

52.     Section 6B covers the notification procedures which the Air Intelligence Agency failed to follow.

53.     Section 6.9.2 requires that the commander provide legal counsel for the serviceman which the Air Intelligence Agency failed to do. Section 6C (6.13.1) gives the requirements for procedural rights. Once again, the Air Intelligence Agency failed to follow any of the U.S. Air Force's regulations.

54.     Count Three specifically deals with the Due Process denied to Mr. John Doe because he was an NCO.

55.     Count Four specifically deals with the Due Process denied to Mr. John Doe because he had over 6 years of service.

56. Count Five specifically deals with the Due Process denied to Mr. John Doe because it was said to deal with national security.

57. Count Six specifically deals with denial of Mr. John Doe's right to an attorney.

58. Count Seven specifically deals with violation of Mr. John Doe's due process right by refusing to fund his security clearance which resulted in a subversion of the adjudication process of his security clearance.

**WHEREFORE, PREMISES CONSIDERED**, Mr. John Doe requests a judgment awarding attorney fees and any other relief to which he may be entitled in equity and good conscience.

### COUNTS EIGHT AND NINE – FALSE IMPRISONMENT

59. The Air Force falsely imprisoned Mr. John Doe when it forced him to report to Maxwell Air Force Base on or about May 21, 2005, upon the threat of considering him Absent Without Leave if he did not report. Being AWOL would have subjected Mr. John Doe to punishment.

60. The Air Force again falsely imprisoned Mr. John Doe when it forced him to report to Dobbins Air Force Base on or about July 18, 2006.

**WHEREFORE, PREMISES CONSIDERED**, Mr. John Doe demands judgment in an amount to be determined at trial for the mental anguish and distress caused by such actions.

### COUNT TEN – VIOLATION OF LIBERTY INTERESTS

61. A case of one's good name and honor is similar to a defamation case where the government is involved. Here, Chief Kerwin, Chief of Personnel, accused Mr. John Doe of a "serious breach of intelligence," which is a crime, of obtaining, possessing, and using highly classified material to do his analysis. She then tells several other individuals that this is her basis for getting rid of Mr. John Doe. Making accusations of such criminal acts is slander per se. Thus, it also violated Mr. John Doe's Constitutional liberty interest in his "good name and honor." Chief Kerwin apparently denies now making such statements. Such action by the government has ruined Mr. John Doe's ability to work in his profession. The logic is this; Mr. John Doe is an intelligence analyst. This profession is <u>only used</u> by the U.S. government. The U.S. Air Force's actions not only excludes Mr. John Doe from further working for the U.S. Air Force, but it also excludes Mr. John Doe from working in other government agencies. All this has been done without "notice" and a "hearing," and based on false accusations made by an individual who now denies it.

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff demands judgment against the United States Air Force in the amount of $2,861,300 as compensatory damages for their violation of his liberty interests.

### COUNT ELEVEN – INVOLUNTARY SERVITUDE

62. Mr. John Doe is presently being held in "involuntary servitude". This charge is being made for the following reasons:

    A. The U.S. Air Force and Department of Defense have refused to perform under their contract with Mr. John Doe, thus denying him of all the benefit of the contract, and in spite of the obvious breach, the Air Force insists that a contract still exists. (Only for their benefit).

    B. Because of that breached contract, the U.S. Air Force maintains that it has COMPLETE CONTROL over Mr. John Doe even while it refuses to pay Mr. John Doe at all or under the contract (the USAF has never paid Mr. John Doe any money), and also it maintains he has continual duties that he must perform.

    C. The U.S. Air Force has denied Mr. John Doe his Constitutional rights on several occasions as though he had none.

    D. It does not matter if agents of the U.S. Air Force consciously planned for Mr. John Doe to be an involuntary servant or if it happened by accident. What is important is that Mr. John Doe's circumstances have resulted in involuntary servitude, and steps were not taken to correct the situation even though every legal and procedural avenue has been taken by Mr. John Doe.

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff prays that this Honorable Court award attorney fees and any other relief to which he may be entitled in equity and good conscience.

### COUNT TWELVE – FAILURE TO CORRECT RECORDS

63. Mr. John Doe has several things that need to be corrected in his military records under 5 U.S.C.A. § 552. This includes his records reflecting: (1) his correct rank of at least SSGT and should be Captain which is the rank he would be now if not for the injustices, (2) correct end of service date, and (3) any awards such as intelligence badge, national service medal, and any other decorations that he should have received for his service.

**WHEREFORE, PREMISES CONSIDERED** in Count Twelve, the Plaintiff demands judgment against the United States Air Force in the amount of the cost of reasonable Attorney Fees which are authorized under 5 U.S.C.A. § 552.

**WHEREFORE, PREMISES CONSIDERED** in the petition, Mr. John Doe prays that this Court award him damages in the amounts set forth above and such other further and different relief as to which he may be entitled in equity and good conscience.

### PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES

Respectfully submitted,

*/s/ James R. Bosarge, Jr.*
James R. Bosarge, Jr. (BOS021)
Attorney at Law
2015 First Ave. North
Birmingham, AL 35203
(205) 458-1100

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Complaint on all Parties concerned by placing same in the U.S. Mail, certified postage prepaid, on this the 7th day of May, 2007.

*/s/*
Of Counsel

**SERVE ALL DEFENDANTS BY CERTIFIED MAIL AT THE FOLLOWING ADDRESSES:**

The UNITED STATES AIR FORCE
d/b/a USAF XOI-RE
d/b/a The AIR INTELLIGENCE AGENCY
a/k/a A.I.A.
1700 Air Force Pentagon
Washington, DC 20330-1700

DONALD RUMSFELDand/or
ROBERT M. GATES, SECRETARY OF DEFENSE
1000 Defense Pentagon
Washington, DC 20301-1000
MICHAEL W. WYNNE,
SECRETARY OF THE AIR FORCE
1670 Air Force Pentagon
Washington, DC 20330-1670;

GENERAL PETER PACE
CHAIRMAN OF THE JOINT CHIEF OF STAFF
9999 Joint Staff Pentagon
Washington, DC 20318-9999

GENERAL T. MICHAEL MOSLEY
AIR FORCE CHIEF OF STAFF
1670 Air Force Pentagon
Washington DC 20330-1670

LT. GENERAL DETULA
COMMANDER OF US AIR FORCE/XOI
1700 Air Force Pentagon
Washington, DC 20330-1700

MAJOR GENERAL F. PRZYBYSLAWSKI
COMMANDER OF ARPC,
Air Force Personnel Center
Randolph AFB TX. 78150

GENERAL JAMES L. JONES
COMMANDER OF USEUCOM
APO AE 09131

CHERYL A. KERWIN and/or her successor
CHIEF OF PERSONNEL FOR THE
US AIR FORCE INTELLIGENCE
d/b/a AIR INTELLIGENCE AGENCY
a/k/a USAF/XOI-RE
HQ USAF/ XOI-REP
240 Luke Avenue
Ste 205
Boling AFB, DC 20332