Doe v. United States Air Force et al                                                                    Doc. 2

# IN THE UNITED STATES DISTRICT COURT,
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| JOHN DOE, an individual, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. CV-07-P-0842-S |
| | ) |
| The UNITED STATES AIR FORCE, a | ) |
| government agency d/b/a USAF XOI-RE, or | ) |
| d/b/a The AIR INTELLIGENCE AGENCY, | ) |
| a/k/a A.I.A.; et al. | ) |
| | ) |

## OPPONENT'S RESPONSIVE SUBMISSION IN RESPONSE TO EXHIBIT B OF THE COURT'S ORDER

Comes now Plaintiff, John Doe, by and through his attorney of record, James R. Bosarge, Jr. and opposes the heretofore filed Motion To Dismiss by the Defendants.  The Plaintiff shows this Honorable Court as follows:

### I. STATEMENT  OF CASE

1.      Plaintiff, Mr. John Doe was a former "Intelligence Advisor" or Sr. Intelligence Analyst for U.S. Special Forces, also known as the "Green Berets".

2.      In 1999, Mr. John Doe focused his skills on military intelligence involving Usama Bin Laden (hereinafter referred to as "Bin Laden") and Saddam Hussein. It was his intelligence analysis on  Bin Laden and Saddam Hussein which led to arbitrary and capricious actions by his superiors which  have resulted in this lawsuit.

3.      On or about March, 2001 and prior to the terrorist attacks on New York City's Twin Towers on 9/11, Mr. John Doe reported his intelligence analysis and personal concerns over possible terrorist attacks by Bin Laden inside the United States to the Air Intelligence Agency and other intelligence agencies.

Dockets.Justia.com

4.      Days after 9/11, Mr. John Doe contracted with the U.S. Air Force Air Intelligence Agency to serve as an Air Force Intelligence Officer/Intelligence Analyst. This occurred quickly after 9/11 because his superiors in the Air Intelligence Agency recognized the validity of his early warning.  Mr. John Doe believed he had a promising future as an Intelligence Analyst for the United States government. He signed a contract with the military, based upon a promise that he would be commissioned at an officer's pay grade and would serve in his capacity as an Intelligence Analyst/Intelligence Officer.

5.      During this time, Mr. John Doe's intelligence analysis was used in part; "cherry-picked", misinterpreted, and manipulated most likely to either support preconceived ideas regarding the true dangers of terrorist activities or policies already established by higher ups in the chain of command. However, it soon became apparent that the U S Air Force (d/b/a the Air Intelligence Agency) was moving toward a cover-up of the early warning offered by the analysis which made the continued presence of the analyst a potential embarrassment in regards to the misuse of that intelligence.

6.      Mr. John Doe was retaliated against and threatened with additional retaliation if he testified or provided evidence about his early warning and how he was being treated by the U. S.  Air Force to Congress at the 9/11 Commission in clear violation of 10 U.S.C.A. § 1034 which states: "Restricting communications with Members of Congress and Inspector General prohibited".

7.      On 2/7/03, the U.S. Air Force moved to cover up the information Mr. John Doe had offered, as well as his status/relationship with the military when he was informed that his SCI Security Clearance and schools would not be funded because of his

intelligence analysis on Bin Laden and Saddam Hussein. The failure to fund his security clearance and training effectively made it impossible for Mr. John Doe to do his assigned job. Still, he was being held under contract and without pay by the U.S. Air Force. Thus, Mr. John Doe was being wrongfully terminated and his contract breached because of his intelligence analysis on Bin Laden and Saddam Hussein.

8.     On or about 2/7/03, Plaintiff was notified by the Chief of Personnel of the U.S. Air Force XOI-RE (hereinafter referred to as USAF XOI-RE and previously known as the Air Intelligence Agency, a/k/a A.I.A.) that the contract between Mr. John Doe and the U.S. Air Force would not be honored, and therefore breached, because of Mr. John Doe's intelligence analysis/intelligence reports on Bin Laden and Saddam Hussein. Therefore, the USAF XOI-RE was well informed of the situation and failed or refused to resolve or remedy the legal issues involved in this matter.

**Defendant's Motion To Dismiss**

Defendants have requested this Honorable Court to dismiss the Plaintiff's case and to disclose his identity because of the constitutional presumption of openness in judicial proceedings. These positions stand at odds with one another. In their motion asking the Court to order the Plaintiff to proceed using his real name, the Defendants are essentially saying the public has a right to know his name and identity, even in light of the possible danger in which this places the Plaintiff. On the other hand, the Defendants in requesting a dismissal of the case are saying the public has absolutely no right to hear the case in a court of law.

In addition, it would seem that the United States Attorney General's office would have a vested interest in hearing the case, especially since it is likely to result in showing

that government personnel: (1) interfered with communications with Congress; (2) lied to

Congress; (3) interfered with the Congressional 9/11 Committee Investigation; (4)

threatened a witness; (5) hindered National Security; and (6) violated the Constitutional

Rights of an individual.

## II. IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS

In **paragraph 1** of their Motion to Dismiss, the Defendants make an erroneous

statement that the Plaintiff "...contends he was discharged from the military without the

benefit of a Board Hearing under Air Force Instruction (AFI) 36-3208 (giving rise to

counts 3-7; Due Process.")

The Plaintiff did not claim he was officially discharged from the military.

However, the Material Breach of Contract for all practical purposes resulted in the

Plaintiff being barred from performing the tasks for which he contracted as part of his

reenlistment. The breach of contract in and of itself was effectively an "involuntary

discharge" even without the formal discharge papers. A material breach of contract

terminates the contract.  The U. S. Air Force violated its part of the contract by denying

the Plaintiff that which was promised, i.e., security clearance and schooling to obtain an

officer's commission. The Plaintiff was shunted aside on the basis of his lack of security

clearance and lack of officer's rank, and denied the benefits of his contract with the U. S.

Air Force for the balance of his anticipated career. The Plaintiff rightfully viewed the

Breach of Contract as an effective, if not technical, discharge from the U. S. Air Force.

His rights under the contract were removed without due process (Plaintiff's Counts 3-7),

false imprisonment and involuntary servitude since the Air Intelligence Agency failed to

follow mandatory regulations relating to the Plaintiff's discharge as related to material

4

breach of contract, time in service,  rank, the interest of national security and his right to an attorney.

In **paragraph 2** of their Motion, the Defendants cite 28 U.S.C. § 1346 (a) (2) as evidence of a "lack of subject matter jurisdiction because the Plaintiff seeks monetary damages in excess of $10,000..."

However,  under 28 U.S.C.A. §. 1343 (a) (1) (2) (3) (4) "The **district courts shall have original jurisdiction of any civil action authorized by law** to be commenced by any person to recover damages for  "...because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in 42 U.S.C.A. § 1985 and § 1983.  In addition,  41 U.S.C.A. § 36  (Liability for contract breach) says " Any breach or violation of any of the representations and stipulations in any contract for the purposes set forth in section 35 of this title shall render the party responsible therefore liable..."  41 U.S.C.A. §. 35 (Contracts for materials, etc., exceeding $10,000) states "In any contract made and entered into by any executive department, independent establishment, or other agency or instrumentality of the United States for the manufacture or furnishing of materials, supplies, articles, and equipment in any amount exceeding $10,000..." The Plaintiff contends that services contracted for fall under this portion of the U.S. Code.  Furthermore,  Fed. R. Civ. P. 82 says all the preceding rules "...shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein.

In addition, Plaintiff requests this Honorable Court to invoke the *Doctrine of Non Conveniens*  since; (1) damages as a  result of the Defendant's actions occurred in this jurisdiction; (2) travel to another jurisdiction would become a great physical and financial

burden to the Plaintiff; (3) several of the named Defendants are no longer in the positions they held at the time the Plaintiff was harmed and therefore not necessarily in the same geographical locations where they had been located; and (4) the physical and financial costs of travel for the defendants will likely be borne by the United States Air Force, which has considerably more financial resources than the Plaintiff.

In the alternative, if the District Court's jurisdiction fails due to 28 U.S.C. § 1346(a)(2) because of the restriction to monetary damages to an amount of $10,000.00 and less, then the suit should be removed to the U.S. Court of Federal Claims under 42 U.S.C.A. § 1491(a)(1) (and Title 28 §1631) which states, "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or un-liquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, shall be considered an express or implied contract with the United States.

In **paragraph 3** of their Motion to Dismiss, the Defendants point to the amount of monetary damage referred to in Plaintiff's Counts 1 and 2 as the reason for dismissal for lack of subject matter jurisdiction.

The Plaintiff contends that the District Court has jurisdiction of action to recover liquidated damages.( *U.S. v Harp*, D.C. Okl 1948; 80 F. Supp. 236, affirmed; 173 F 2d 761, certiorari denied; 70 S. Ct. 56; 338 U.S. 816; 94 L. Ed 494). Also, the District Court has original jurisdiction of suit and was not required to wait for an administrative

determination to be made. *U.S. v. Gulf States Asphalt Co.*, C.A. Tex. 1973, 472 F. 2d 933.

Furthermore, in paragraph 3, the Defendants say "the claims must be dismissed for lack of subject matter jurisdiction because there has been no waiver of sovereign immunity with regard to such claims."

The "waiver" is implicit in the Contract Disputes Act of 1978 which act waives the government's sovereign immunity, permitting contractors to sue the government in either an administrative tribunal or in a court.

In **paragraph 4**, the Defendants state that the Plaintiff cannot prove the enlistment agreement was breached by the defendants, and that the plaintiff was not involuntarily discharged from the U.S. Air Force.

Plaintiff is fully capable of proving that his enlistment agreement was breached by the defendants and will be able to prove same when he has a chance to present the appropriate evidence as well as testimony from Chief Cheryl A. Kerwin, former chief of personnel for the Air Intelligence Agency, supported by other witnesses. The Plaintiff intends to present and clarify all the actions and/or reactions within and outside the chain of command which will uncover any wrongdoing on the part of agents of the U.S. government as that wrongdoing has damaged the Plaintiff. The material breach of the agreement is the heart of the matter in this case, which must be proved, can be proved and will be proved..

The Defendants state in **paragraph 5** of their Motion to Dismiss that "...the plaintiff has failed to exhaust his administrative remedies under the Federal Tort Claims Act, a prerequisite to this Court's jurisdiction (28 USC § 2680(a) & (h). Rule 12(b)(1), F.R. Civ. P).

The following actions show otherwise, and that the Plaintiff has made every effort available to him to resolve the issues with which he has been faced:

9.    Between the dates of 2/7/03 and 3/10/05, Plaintiff well informed his Chain-of-Command at European Command (a/k/a EUCOM) of the situation. Initially, European Command brought a Brigadier General in to resolve the situation. However, in the end, European Command failed to resolve or remedy the legal issues involved in this matter.

10.    On or about 3/25/04, Mr. John Doe filed a Congressional Complaint on the issues involved in this case while at the same time complying with a request for information from the Congressional 911 Committee. The Honorable Congressman Spencer T. Bachus sponsored this Congressional Complaint. The Honorable Congressman Bachus quickly informed Major General Leroy Barnidge of the situation on 3/26/04. Major General Barnidge was stationed with the U.S. Air Force at the Pentagon and was the Director for the Office of Legislative Liaison at the time. Major General Barnidge failed to resolve or remedy the legal issues involved in this matter. However, in the U S Air Force reply it was recommended that Mr. John Doe: (1) notify the Inspector General and (2) write and provide statements to the Air Force Board for Corrections of Military Records (AFBCMR) which was done and subsequently returned. *(see Plaintiff's Exhibits A & B, filed under seal)*

11.    Approximately between the dates of 3/25/04 and 11/01/04, Plaintiff attempted to get written statements from key individuals involved in the issues of this case as per the Air Force Board for Corrections of Military Records recommendations that written statements be provided. Mr. John Doe was unable to get statements from any

individual involved in this matter  because, as he was informed, "someone high in the Chain-Of-Command was calling and e-mailing individuals to not provide any written statements on this matter".  This is sometimes referred to as "Command Influence" or in this case, "Undue Command Influence".  This prevented further actions in this direction to resolve or remedy the legal issues involved in this matter.

12.    On or about 11/1/04, Plaintiff filed a complaint with the Department of Defense Inspector General and addressed to the Honorable Inspector General Joseph E. Schmitz and then Secretary of Defense Donald Rumsfeld.  No case number was assigned to this matter and no one contacted or responded to Plaintiff's complaint. Plaintiff followed up with a phone call without success.  In the end, Mr. John Doe later learned from U.S. Senator Jeff Sessions' office that his I.G. Complaint was sent to the office of the Secretary of Defense, Donald Rumsfeld, where the investigation was arbitrarily and capriciously stopped.  Therefore, the Secretary of Defense, Donald Rumsfeld, failed to resolve or remedy the legal issues involved in this matter.

13.    On or about 12/9/04, Plaintiff filed a second Congressional Complaint on the issues involved in this matter.  The Congressional Complaint was sponsored by the Honorable Senator Jeff Sessions a member of the Armed Services Committee.  The investigation started very slowly (after 5 or 6 months) and ended with a report from the Department of Defense Inspector General dated 07/27/05.  Summarized, this report states that the Department of Defense I.G., U.S. Air Force I.G., and U.S. Air Force Office of Special  Investigations, superficially looked into  this matter and concluded that "there was no basis for the allegations."  However, all of these investigators failed to contact relevant witnesses or even contact the Plaintiff.  Proper investigation would have resulted

9

in the discovery of the cover-up.  Failure to properly investigate resulted in these
investigators overtly or through incompetence facilitating the cover-up.  Therefore, the
Department of Defense I.G. failed to resolve or remedy the legal issues involved in this
matter.

14.     Mr. John Doe applied to the Department of the Air Force Review Board as
instructed by the Department of Defense.  On 02/16/06, the Department of the Air Force
Review Board **arbitrarily and capriciously returned the entire application** stating
they could only review one of the twelve (12) issues.  The Review Board went on to say
that the other matters "must be pursued **outside this administrative review forum**".
Once again, Department of  the U.S. Air Force failed to resolve or remedy the legal
issues involved in this matter. *(see Exhibit B, filed under seal)*

15.     Therefore, Plaintiff shows that "All Administrative Remedies have been
Exhausted". Since all Department of Defense and U.S. Air Force Procedures have been
followed by the Plaintiff and proven to be futile, the Federal Civil Courts are the
Plaintiff's last hope for a resolution to the injustices committed against him.   In addition,
the District Court is not required to wait for an administrative determination to be made.
*United States v. Gulf States Asphalt Co*. C.A. Tex. 1973, 472 F. 2d 933.

Also, in paragraph 5 the Defendants cite 28 U.S.C.A. § 2680 (a) & (h) in their
contention the Plaintiff cannot establish a waiver of sovereign immunity with regard to
the intentional torts of false imprisonment, slander or defamation.

In this portion of the code it is stated that "The provisions of this chapter and
section 1346 (b) of this title shall not apply to (a) any claim based upon an act or
omission of an employee of the Government, **exercising due care**..." It is the Plaintiff's

claim and/or contention that at no time was "due care" exercised by the individuals involved in breaching Mr. John Doe's agreement/contract with the U.S. Air Force. That, in fact, the breach was the result of malice of forethought and carried out in a conspiratorial manner.   Congress never intended to provide immunity so that a government agency could: (1) interfere with communications with Congress; (2) Interfere with the 9/11 Congressional Investigation; (3) Threaten and/or harm witnesses in order to intimidate them;  (4) Lie to Congress; *(see Exhibits M and N, filed under seal)*; (5) Hinder national security; (6) take action that was not in the best interest of the United States while violating a person Constitutional Rights.

In addition, the Plaintiff never included slander or libel in his petition, rather his liberty interest of one's good name and honor" were defamed. The Plaintiff alleges that this claim is a Constitutional issue (Liberty Interest)  not requiring a waiver of sovereign immunity.  There is no immunity for violating one's Constitutional Rights.

**In paragraph 6** of their Motion to Dismiss, the Defendants state that any Constitutional tort claims "... to be dismissed for lack of subject matter jurisdiction and/or failure to state a claim in light of the intra-military immunity or Feres doctrine because any alleged tortious conduct or Constitutional harm could have only occurred incident to the Plaintiff's military service.(Rule 12(b)(1), (b)(6) & Rule 56, F.R. Civ. P.

On its face, to claim the Feres doctrine applies to this matter and that intra-military immunity exists is ludicrous at best,  since the Feres doctrine refers to **physical injuries** suffered by military personnel **on active duty** while they are involved in conducting the activities to which they have been assigned; injuries which they might even expect as a possibility of their service.  A Material Breach of Contract is hardly

11

what anyone might expect in the conduct of their activities on behalf of the military. Therefore, such tortious conduct or Constitutional harm is **not incident to the service** for which the Plaintiff has contracted and not a common or expected occurrence in the normal course of events. Such tortious conduct occurred after there was a material breach of contract. John Doe's service was over when these tortious actions occurred.

**In paragraph 7**, the Defendants ask for dismissal of Count 11 for lack of subject matter jurisdiction and/or for failure to state a claim in light of the intra-military immunity or Feres doctrine because the plaintiff cannot prove that he was called to **active duty** other than under the terms of his voluntary enlistment contract..." and "...any alleged harm or wrongdoing occurred only incident to the plaintiff's military service.

The argument against this paragraph is the same as that for paragraph 6 in that the Feres doctrine refers to **physical injuries** suffered by military personnel **on active duty** while they are involved **in conducting the activities to which they have been assigned;** injuries which they might even expect as a possibility of their service. A Material Breach of Contract is hardly what anyone might expect in the conduct of their activities on behalf of the military. Therefore, such tortious conduct or Constitutional harm is not incident to the service for which the Plaintiff has contracted and not a common or expected occurrence in the normal course of events. There is NO sovereign immunity for violating a person's Constitutional rights.

**In paragraph 8**, the Defendants refer again to the Plaintiff failing "...to exhaust his administrative remedies. They also state that the "Plaintiff cannot show that he submitted the requested information" requested by the Air Force Board for the Correction of Military Records. This is in response to Count 12 of the Plaintiff's original petition --

Failure to Correct Records.

The Plaintiff's exhausting of administrative remedies has been answered in the Plaintiff's response to the Defendants' paragraph 5. Plaintiff also can prove that any information requested by the Air Force Board for the correction of military records was included in the initial packet of information sent to the Board even though that body failed to take any action regarding all such information. The packet of information was returned to the Plaintiff *(See Exhibit A, filed under seal)* and therefore such correction of military records was denied.   No further information was needed or available for separation, or  date of rank.  Further, denial of the application was predictable because the separation date could only be changed by admitting a breach of contract. Since the Plaintiff exhausted administrative remedies, and went beyond those remedies to resolve the issues  before conducting a civil action against the U.S.  Air Force and named Defendants, the Court has subject matter jurisdiction to review this claim. *Perez-Perez v. Hanberry*, 781 F. 2d 1477 (11th Cir. 1986). Rule 12(b)(1), Fed.R. Civ. P.   Furthermore, the District Court has original jurisdiction of this claim and is not required to wait for an administrative determination to be made, (*U.S. v. Gulf States Asphalt Co*., C.A. Tex. 1973, 472 F. 2d 933).

### III. BACKGROUND ON PLAINTIFF & HIS CASE

16.    Mr. John Doe trained at Ft. Knox and was subsequently trained as an intelligence analyst at Ft. Bragg and eventually attained the rank of Sergeant.

17.    He served in the capacity of the Senior Intelligence Analyst to the Special Forces (the "Green Berets") from 02/20/91 to10/09/92. Notably, the Plaintiff served in this capacity during the Desert Shield/Desert Storm campaign.

18.     In his capacity as Senior Intelligence Analyst, Mr. John Doe led the All Source Production Center which produced intelligence reports from battlefield intelligence, human intelligence, signal intelligence, photo intelligence, and counter-intelligence.  He earned and maintained a Top Secret/SBI security clearance while in the Army.

19.     During Desert Shield/Desert Storm, on or about April of 1991 Mr. John Doe was ordered to travel to the Washington, D.C. area and meet with the Chief of Staff of the Army, General Carl E.  Vuono.  At this location, he participated in a three day round-table discussion on the Arab-Israeli conflict and the ongoing Gulf War. Mr. John Doe later returned to his duties as Senior Intelligence Analyst and briefed General Stiner, Commander of the 18th  Airborne Corps. He demonstrated his unique skills as an intelligence analyst during this period.

20.     In or about late 1999, Mr. John Doe identified Bin Laden and his terrorist organization, Al-Qaeda, as a major threat to the United States.

21.     In or about early 2000, Mr. John Doe began conducting analysis on possible connections between Bin Laden and Saddam Hussein, the then president of Iraq, and the threat that they might pose if they allied themselves.

22.     By 2001, Mr. John Doe had found a position with the Air Intelligence Agency (A.I.A.) and the Joint Analysis Center (J.A.C.) of European Command. However, he had not yet entered into a contract with them because of the U.S. Air Force's slow and inefficient process.

23.     In early 2001, Mr. John Doe became very concerned about the likelihood of Al-Qaeda attacks in the United States. Additionally,  he became very concerned with

14

his findings as to the **possible** relationship between Bin Laden and Saddam Hussein,
which he reported to the A.I.A and the J.A.C, and to which the U.S. Air Force would
**wrongfully** and continuously refer to later as **"the link between Bin Laden and
Saddam Hussein."**

24.    After the September 11, 2001 terrorist attacks on the World Trade Center
and the Pentagon, Mr. John Doe reiterated in a report dated September 14, 2001, that it
was extremely likely that the 9/11 attacks were orchestrated by Bin Laden and Al-Qaeda.
He also reiterated his concern about a **possible** relationship between Bin Laden and
Saddam Hussein. This report was provided to Senator Richard Shelby, the then Chairman
of the Select Committee on Intelligence, as well as the individuals/agencies with whom
Mr. John Doe felt a responsibility to communicate.

25.    On September 21, 2001, Mr. John Doe contracted with the A.I.A. and the
U.S. Air Force to conduct intelligence analysis work for the J.A.C. at European
Command.   His enlistment was for a term of 6 years.  *(see Exhibit C, filed under seal)*

## IV. MATERIAL BREACH OF CONTRACT OCCURS

26.    On or about February 7, 2003, the Chief of Personnel, Chief
Cheryl A. Kerwin, at A.I.A. (now known as Air Force XOI-RE) refused to fund Mr.
John Doe's security clearance and his military schools.

27.    When Mr. John Doe asked Kerwin for a reason as to why she was refusing
to fund his security clearance and schooling for his commission and intelligence training
so that he might live up to his contractual agreement, Kerwin **accused Mr. John Doe of
a "serious breach of intelligence."**  A breach of intelligence is **a felony**, an accusation
which carried an implied threat of prosecution. Chief Kerwin wrongfully accused Mr.

John Doe of using classified material in his analysis of Bin Laden and Saddam Hussein when, in fact, his analysis and the sources he used for the analysis, were unclassified. The analysis was "classified" after the events of 9/11.

28.     Kerwin told Mr. John Doe that "he would be involuntarily removed and dishonorably discharged from his position if he did not sign a Form 1288" (request to be re-assigned) . When Mr. John Doe asked who had made this decision, Kerwin stated that this was a joint decision between her and Mr. Neil Green, GG-14 the Technical Director and that it had been discussed with Mr. Coop with European Command and Colonel O'Bray with European Command. Chief Kerwin also said that Colonel Les Walraven (John Doe's Supervisor) may have been informed, although she was not directly involved in that communication. In her communications with these individuals, Chief Kerwin damaged  Mr. John Doe's good name and honor effectively making  it impossible to obtain an intelligence analyst position with the United States Air Force or any other intelligence agency of the United States government.

## V. ADDITIONAL EFFORTS BY PLAINTIFF TO RESOLVE ISSUES

29.     Subsequent to this conversation, Mr. John Doe enlisted Col. Walraven's support in resolving the situation through the chain-of-command at European Command. He  spoke with Col. Walraven  regarding the matter. After the conversation with Mr. John Doe, Col. Walraven then contacted Brigadier General Mungenast to intervene on the Plaintiff's behalf.

30.     However, despite General Mungenast's attempt to resolve the situation, and in a subsequent conversation with Kerwin, **it became clear to Mr. John Doe that his  security clearance and schools would not be funded and that he would be**

**dishonorably discharged, as threatened,  if he did not sign the Form 1288**. On or about 03/09/03, he did sign the Form 1288 but he **specifically reserved any and all remedies available to him in a court of law**. *(see Exhibit D (affidavit and email) , filed under seal)*

31.    On or about February, 2004, Mr. John Doe began seeking legal counsel to help clear his good name. An attorney was referred and the attorney initiated a call to Mr. John Doe.  The attorney, Mr. Stripling, told Mr. John Doe that he had worked with him in the Special Forces.  An appointment was set to meet and discuss Mr. John Doe's situation.

32.    On or about 02/06/04, Mr. John Doe met with Stripling concerning his case against the U.S. Air Force and whether he should  contact the 9/11 Commission. At that meeting, Stripling became keenly interested in Mr. John Doe's documentation as evidence of the charges against the Defendants and, when pressed for his opinion as to the viability of any action against the government, Stripling told Mr. John Doe that he should not sue the U S Air Force and also that he should not testify to the 9/11 Commission of the United States Congress.

33.    Stripling then identified himself as Colonel Stripling with the Judge Advocate General Corps  of the U. S. Air Force. When Mr. John Doe was told this, he expressed that it was clear that Stripling had a serious conflict of interest and then demanded Stripling return his documents to him.

34.    Stripling then asked Mr. John Doe if he had read the Patriot Act, to which the Plaintiff answered that he had not. Stripling "threatened" Mr. John Doe that ..."if you testify, provide evidence to 9/11 committee or bring legal action against the U.S. Air

17

Force, you will be arrested under the Patriot Act and sent to Guantanamo Bay."

35.     On or about June 6, 2004, Mr. John Doe contacted the Federal Bureau of Investigation in Birmingham, Alabama,  concerning the threat to him, "if he testified before the Congressional 9/11 Commission" *(see Exhibit L, filed under seal).*  He was informed there would be no investigation.

36.     On or about February, 2004,  Mr. John Doe was contacted by Sam Brinkley of the Congressional 9/11 Commission staff, who asked Mr. John Doe to provide the names of his intelligence reports. Mr. John Doe refused to hand over the requested information because of the threats made against him as set forth in paragraph 34 referenced above.

37.     On or about March, 2005, Mr. John Doe received orders from the U. S. Air Force to report to Maxwell Air Force Base for one day on May 21, 2005. Mr. John Doe responded that it was his opinion that he did not have to comply with this order as the U. S. Air Force had breached his contract.  Mr. John Doe demanded that an investigation into the matter be conducted, and upon information and belief, an investigation was initiated by Senator Jeff Sessions and then turned over to the Department of Defense.

38.     On May 21, 2005, Mr. John Doe reported to Maxwell as ordered, and at which time he informed Captain Cannon, the officer in charge, of the circumstances surrounding these orders. Mr. John Doe demanded that he be allowed to leave as he felt he was being "falsely imprisoned." Captain Cannon stated that "Maxwell did not want any part of this fiasco" and released John Doe, but not until six hours of his time had been wrongfully appropriated. Mr. John Doe was later ordered to report to Dobbins Air

Force Base on July 18, 2006.  In each instance, the Plaintiff notified authorities that because of the contract breach he considered these orders as being tantamount to false imprisonment. *(see Exhibits E & F, filed under seal)*

39.    Since the filing of this lawsuit on May 7, 2007,  your Plaintiff received an Honorable Discharge from the United States Air Force releasing him from his military service on September 20, 2007.

## VI. STANDARD FOR MOTION TO DISMISS

"A Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102 (1957).  See also *Barnett v. Bailey*, 956 F. 2d 1036, 1043 (11th Cir. 1992).  In addition, "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim...all the rules require is a 'short plain statement of the claim' that will give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47,78 S.Ct. 99, 103 (1957). See also *In re Johannessen*, 76 F.3d 347, 349-50 (11th Cir. 1996).  A 12(b)(6) motion tests only the sufficiency of the Plaintiff's pleadings.  Denial of such a motion, therefore, does not indicate that the Plaintiff will ultimately prevail on a claim that withstands a 12(b)(6) challenge.  *Mann v Adams Realty Co., Inc.*, 556 F.2d 288, 293 (5th Cir. 1977). The Court should not go beyond a determination of whether the Plaintiff has stated a claim against the Defendants to speculate about what the evidence may show.  *In re Southeast Banking Corp.*, 69 F.3d 1539, 1550 (11th Cir. 1995).

The Eleventh Circuit has recently addressed the appropriateness of 12(b)(6)

19

motions and proclaimed: "We hasten to add that this motion is viewed with disfavor and rarely granted." *Brooks v. Blue Cross and Blue Shield of Florida,* 116 F.3d 1364, 1369 (11th Cir. 1997). The only matter before this Court is whether Plaintiff could conceivably prove any set of facts that would entitle Plaintiff to relief under any cause of action as alleged in her Complaint. The Plaintiff has clearly stated numerous proper causes of action entitling Plaintiff to relief, and therefore Defendants' Motion to Dismiss is due to be denied.

## VII. PLAINTIFF HAS NOT FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

**The Complaint in this action alleges that Defendants United States Air Force, et al. established a legal contract whereby the Plaintiff would use his skills, knowledge and talent as an Intelligence Analyst, and in return the U.S. Air Force would pay the costs of schooling and obtaining the necessary security clearance so that he might be eligible to carry out his responsibilities to the U. S. Air Force under the contract. In addition, it was established by contract that the Plaintiff would be assigned to an officer's billet and the Plaintiff would be sent to school so that he might qualify for a commission as an officer in the U.S. Air Force.** The complaint alleges that the U.S. Air Force refused to honor the major material elements of the agreement by refusing to pay for the security clearance and school for security and officer's training resulting in a material breach of contract. The U. S. Air Force then effectively ridded itself of the Plaintiff by forcing him into employment categories which had no relationship to the agreement into which both parties entered willingly and knowingly.

Contrary to Defendants' position, the above allegations not only properly state a

cause of action against the U. S. Air Force and the Defendants, but the allegations also comply with the requirements of Federal Rules of Civil Procedure 9(b) which requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Plaintiff's allegations in this case, as set forth above, clearly satisfy the requirements of Rule 9(b). The Defendants can hardly say that the above allegations do not state a cause of action against the Defendants in their capacities as agents of the U.S. Air Force.

In addition to the Plaintiff's Material Breach of Contract and Wrongful Termination, the complaint cites violations of the Plaintiff's Constitutional rights, in particular Due Process, as well as False Imprisonment, Involuntary Servitude, and Failure to Correct Records. **These claims are governed by the general pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which require a Plaintiff "to plead only a short, plain statement of the grounds upon which he is entitled to relief".** *( Peters v. Amico Oil Co.,* **57 F. Supp. 2d 1268 (M.D. Ala. 1999).**

## VIII.  EVIDENCE

Furthermore, this pleading is supported by submission of evidence, which is separately-filed UNDER SEAL with the Clerk of the Court

**WHEREFORE PREMISES CONSIDERED**, Your Movant prays that this Honorable Court will enter an Order denying the Defendant's Motion To Dismiss.

Furthermore, your Movant prays that in the event this Honorable Court will not retain jurisdiction of this matter that this Court will transfer this case to the Court of Claims in accordance with Title 28 § 1631 states … "Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of

administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred."

If the District Court's jurisdiction fails due to 28 U.S.C. § 1346(a)(2) because of the restriction to monetary damages to amount of $10,000.00 and less, then the suit should be removed to the U.S. Court of Federal Claims under 42 U.S.C.A. § 1491(a)(1) which states, "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or un-liquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service shall be considered an express or implied contract with the United States.

Your Movant prays for all other such general and different relief as may be required in equity and good conscience.

Respectfully submitted,

_____s/James R. Bosarge, Jr. ___
James R. Bosarge, Jr., Esquire

**THE BOSARGE LAW FIRM P.C.**
2015 First Avenue North
Birmingham, Alabama  35203
(205) 458-1103

22

## CERTIFICATE OF SERVICE

   I hereby certify that I have served a  copy of the foregoing on counsel for the Defendants, Edward Q. Ragland, Assistant United States Attorney, 1801 Fourth Avenue North, Birmingham, Alabama  35203 by using the CM/ECF system which will send notification of such filing to all parties concerned.

           ____s/James R. Bosarge, Jr.____
           James R. Bosarge, Jr, Esquire