Doe v. United States Air Force et al

Case 2:07-cv-00842-RDP   Document 24   Filed 10/29/2007   Page 1 of 7

Doc. 24

FILED
 2007 Oct-29  PM 11:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>v.<br><br>The UNITED STATES AIR FORCE, *et al.*,<br><br>    Defendants. | CIVIL ACTION NO.<br>2:07-CV-0842-RDP |

### DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSIVE SUBMISSION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT

Come now Defendants, by and through Alice H. Martin, United States Attorney for the Northern District of Alabama, and reply to Plaintiff's Responsive Submission in opposition (doc. 20) to Defendants' motion to dismiss, or alternatively, for summary judgement (doc. 20) ("Plaintiff's Opposition").[1]

Plaintiff does not claim he was officially discharged from the military. Plaintiff's Opposition, p. 4. Rather, he claims that the alleged breach of contract resulted in an "involuntary discharge." Further, Plaintiff contends that Defendants breached the contract by denying the Plaintiff "security clearance and schooling to obtain an officer's commission. Id.

Plaintiff's explanation of his claims in this case only serve to demonstrate that his claims in this case are non-justiciable, and are therefore subject to dismissal. First, by Plaintiff's own admission, at the heart of his claims is the failure of the Air Force to

---

[1] Defendants reiterate each and every argument set forth in in their previously-filed motion to dismiss, or alternatively, for summary judgment, and the supporting memorandum of law. To the extent Defendants do not reply in this brief to each issue raised by Plaintiff, Defendant refers the Court to their previously-filed submissions.

provide him a security clearance. It is well-settled that courts may not review security clearance determinations, including suspensions, revocations or denials. In *Department of Navy v. Egan*, 484 U.S. 518, 527 (1988), the Supreme Court recognized that the general presumption of review of agency action "runs aground when it encounters concerns of national security * * * where the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch." The Court, in *Egan*, held that the Merit Systems Protection Board -- which reviews adverse actions under the civil service laws -- had no authority to review the substance of an underlying decision to deny or revoke a security clearance when reviewing an adverse employment action. *Id*.

The Court ruled that no one has a right to a security clearance and that such clearance may only be given when "clearly consistent with the interests of the national security." *Id.*, at 528 (internal quotation marks and citations omitted). "The grant of a clearance requires an affirmative act of discretion on the part of the granting official." *Id.* The Court explained that security clearance decisions are not to be equated with passing judgment upon an individual's character:

> Instead, it is only an attempt to predict his possible future behavior and to assess whether, under compulsion of circumstances or for other reasons, he might compromise sensitive information. * * * The attempt to define not only an individual's future actions, but those of outside and unknown influences renders the 'grant or denial of security clearances . . . an inexact science at best.'

*Id.*, at 528-29 (*quoting Adams v. Laird*, 420 F.2d 230, 239 (D.C. Cir. 1969)). "'An agency head who must bear the responsibility for the protection of classified information committed to his custody should have the final say in deciding whether to repose his trust in an employee who has access to such information.'" *Id.*, at 529 (*quoting Cole v. Young*,

2

351 U.S. 536, 546 (1956)). Thus, *Egan* created a strong presumption that security clearance decisions cannot be statutorily challenged because they are discretionary judgments committed to the Executive Branch by law.

Plaintiff also contends that the alleged breach of contract resulted in the Plaintiff being denied his rights under the contract without due process of law. Id. Further, Plaintiff argues that, as a result of the Air Force failing to follow mandatory regulations relating to Plaintiff's discharge, he was subjected to false imprisonment and involuntary servitude. Id. at 4-5. Therefore, all of Plaintiff's claims herein relate to incidents arising from his time with the Air Force before he was "officially discharged."

Courts have long followed a policy of judicial non-intervention in military matters, finding them to involve nonjusticiable political questions. See *e.g.*, *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)("[I]t is difficult to conceive of an area of governmental activity in which the courts have less competence") and *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953)("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."). "The principle expressed in these cases is that civilian courts may not sit in plenary review over intraservice military disputes." *Crawford v. Texas Army National Guard*, 794 F.2d 1034, 1035 (5th Cir. 1986). This principle applies as equally to the National Guard as to the regular U.S. armed forces. *See Stencel Aero Engineering Corporation v. United States*, 434 U.S. 882 (1977); *Holdiness v. Stroud*, 808 F.2d 417, 422-423 (5th Cir. 1987); *Crawford v. Texas Army National Guard*, 794 F.2d 1034 (5th Cir. 1986).

Factors counseling against judicial intervention have been the Constitutional

3

delegation of authority over the armed forces to the legislative branch (Congress) and the potential presented for disruption of military command and discipline.  In *U.S. v. Stanley*, 483 U.S. 669 (1987), for example, the Supreme Court found itself hesitant to act because "confronted with an explicit Constitutional authorization for *Congress* '[t]o make rules for the government and regulation of the land and naval Forces,' U.S. Const. Art. I, § 8, cl. 14."  *Stanley*, 483 U.S. at 682.  Additionally, the Court found unacceptably problematic "the prospect of compelled depositions and trial testimony by military officers concerning the details of their military commands. . . the mere process of arriving at correct conclusions would disrupt the military regime."  *Stanley*, 483 U.S. at 682-3.

The *Stanley* case was part of an evolutionary expansion of the *Feres* doctrine stating that courts may not entertain the actions of servicemen against the military, their superiors, or others for wrongs arising out of or incident to military service.  The seminal case held that military service members could not sue under the Federal Tort Claims Act for injuries incurred incident to their service. *Feres v. United States*, 340 U.S. 135 (1950).

Later, in *Chappell v. Wallace*, 462 U.S. 296 (1983), the Supreme Court held that enlisted personnel had no Constitutional *Bivens*-type claims against superior officers for alleged racial discrimination resulting in undesirable duties, low performance appraisals, and disciplinary penalties of unusual severity. *Stanley* further expanded the holding in *Chappell* such that, regardless of whether a superior-subordinate relationship was at issue, military personnel had no *Bivens*[2]-type remedy for any alleged Constitutional violations arising out of or incident to military service.  *See* Stanley, 483 U.S. at 683-84.

---

[2]  *Bivens v. Six Unknown Fed. Narcotic Agents*, 403 U.S. 388 (1971).

4

The expansion of the *Feres* doctrine has been such that the Supreme Court has referred to it as having been applied "consistently to bar *all* suits on behalf of service members against the Government based upon service-related injuries." *United States v. Johnson*, 481 U.S. 681, 687-88 (1987)(emphasis added).

". . . *Feres* and its progeny, have drastically narrowed the scope of permissible lawsuits against military agencies and military officers." *Uhl v. Swanstrom*, 79 F.3d 751, 755 (8th Cir. 1996). *Cf. Udell v. Adjutant General's Department of the State of Texas*, 878 F. Supp. 991 (S.D. Tex 1995)(holding as *Feres*-barred claims of a Texas Air National Guardsman arising under the Texas Whistleblower Act, the Texas Commission on Human Rights Act; common-law claims of libel, slander, and defamation; and claims under the state constitution). Hence, the *Feres* bar has been applied not only to Constitutional and statutory torts, but also to claims arising under the Privacy Act as well. *Uhl v. Swanstrom*, 79 F.3d 751 (8th Cir. 1996).

> According to Supreme Court rationale,
>
> . . .a suit based upon service-related activity necessarily implicates the military judgments and decisions that are inextricably intertwined with the conduct of the military mission. Moreover, military discipline involves not only obedience to orders, but more generally duty and loyalty to one's service and to one's country. Suits brought by service members against the Government for service-related injuries could undermine the commitment essential to effective service and thus have the potential to disrupt military discipline in the broadest sense of the word.

*Johnson*, 481 U.S. at 691 (footnote omitted). "As a result of this line of cases, there is no recognized cause of action for a member to request monetary damages from the military if the claim is based on an injury that is incident to service." . *Speigner v. Alexander*, 248 F.3d 1299, 1295 (11th Cir.), <u>cert</u>.

5

denied, 534 U.S. 1056 (2001), *citing Stanley*, 483 U.S. at 683-84).

The Eleventh Circuit applies a three-part analysis to determine whether an injury is incident to service -- "(1) the duty status of the service member, (2) the place where the injury occurred, and (3) the activity the serviceman was engaged in at the time of injury." Pierce v. United States, 813 F.2d 349, 352-53 (11th Cir. 1987) (per curiam). After applying these factors, the Court is to consider the totality of the circumstances to determine whether the injury was incurred incident to service. Kitowski v. United States, 931 F.2d 1526, 1561 (11th Cir.), cert. denied, 502 U.S. 938 (1991).

Regardless of the legal theory or theories Plaintiff is espousing, the facts, as well as Plaintiff's own admissions, establish that all of his claims arose as a result of plaintiff's service with the United States Air Force. Therefore, Plaintiff's claims are non-justiciable and subject to dismissal.

## CONCLUSION

For the reasons stated above, the defendants respectfully request the Court to dismiss the plaintiff's complaint in its entirety.

Respectfully submitted,

Alice H. Martin
United States Attorney

**s/ Edward Q. Ragland**

6

EDWARD Q. RAGLAND
Assistant United StatesAttorney
Bar Number: ASB-7291-G69E
Attorney for Defendant
1801 Fourth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 244-2109
Fax: (205) 244-2181
Email: ed.ragland@usdoj.gov

Of Counsel:
CAPTAIN JASON S. OSBORNE
Air Force Legal Services Agency
General Litigation Division
1501 Wilson Blvd., 6th Floor
Arlington, VA  22209-2403
(703) 696-9031

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2007, I filed the foregoing with the Clerk of the Court using CM/ECF, and a copy of the foregoing was automatically sent through that system to the following counsel for the plaintiff:

**James R Bosarge, Jr, Esq.**

/s Edward Q. Ragland
Edward Q. Ragland
Assistant U.S. Attorney

7