FILED

2008 Feb-12  PM 02:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | Case No.:  **2:07-cv-00842-RDP** |
| | } | |
| THE UNITED STATES AIR FORCE, | } | |
| et al., | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

The court has before it the following motions:  (1) Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim, or Alternatively, Motion for Summary Judgment (Doc. # 14) filed on October 12, 2007, by Defendants the United States Air Force, the Secretary of Defense, the Secretary of the Air Force, the Chairman of the Joint Chiefs of Staff, the Air Force Chief of Staff, Commander of U.S. Air Force Executive Office of Intelligence, Commander of Air Reserve Personnel Center, Commander of U.S. European Command, and Chief of Personnel for the U. S. Air Force Intelligence (hereinafter "Defendants"); (2) Motion for Order Requiring the Plaintiff to Proceed in this Litigation under his Real Name (Doc. # 17) filed on October 17, 2007, by Defendants; and (3) Motion to Appoint Special Prosecutor (Doc. # 25) filed on November 12, 2007, by Plaintiff.   The motions have been briefed, and the court heard oral argument from the parties on November 14, 2007.

For the reasons outlined below, the court finds that Defendants' Motion to Dismiss for Lack of Jurisdiction is due to be granted pursuant to Fed. R. Civ. P. 12(b)(1).  (Doc. # 14).[1]  Therefore, Defendants' Alternative Motion for Summary Judgment (Doc. # 14), Defendants' Motion for Order Requiring the Plaintiff to Proceed under his Real Name (Doc. # 17), and Plaintiff's Motion to Appoint Special Prosecutor (Doc. # 25) are moot.[2]

## II.      Standards of Review and Relevant Legal Principles

It is axiomatic that, as a threshold matter, this court must examine whether it has subject matter jurisdiction over Plaintiff's claims in this case.  *FW/PBS v. Dallas*, 493 U.S. 215, 231 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction.").  In this Circuit, attacks on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) come in two forms with two different standards of review:   (1) "facial attacks" on the complaint, which "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion," *Menchaca v. Chrysler Credit Corp*., 613 F.2d 507, 511 (5th Cir.1980); and (2) "factual attacks," which challenge "the existence of subject matter jurisdiction in fact, irrespective of the

---

[1] Although Defendants' motion is styled as an alternative motion for summary judgment, the court need not convert it to a Rule 56 motion in order to consider extrinsic evidence related to this court's jurisdiction given the relaxed standard of review for a motion to dismiss brought pursuant to Rule 12(b)(1).  *See, e.g.*, *Morrison v. Amway Corporation*, 323 F.3d 920, 924-925 (11th Cir. 2003) (explaining significantly different standards governing element versus jurisdictional challenges and recognizing in context of 12(b)(1) factual motions that consideration of extrinsic evidence such as testimony and affidavits is permissible and that "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.").

[2] Defendants suggested at oral argument that even if the court determines that it lacks subject matter jurisdiction over this case, it should nonetheless rule on the issue of Plaintiff's anonymity. The court declines to do so and finds instead that because it lacks subject matter jurisdiction over Plaintiff's claims, all other pending requests are moot.

2

pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Menchaca*, 613 F.2d at 511.

In a case like this in which all of the Defendants are federal governmental entities sued in their official capacities, this court's jurisdiction to entertain Plaintiff's claims and grant relief thereon is dependent upon, and strictly limited to, the extent to which the United States has waived its sovereign immunity as to claims against it. *United States v. Testan*, 424 U.S. 392, 402 (1976). A waiver of sovereign immunity and the resulting consent for the United States to be sued "cannot be implied and must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969). Accordingly, any grant of jurisdiction to the court must be construed strictly and all conditions placed upon such a grant must be satisfied before the court may accept jurisdiction. *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (citations omitted).

Because Defendants' assertion of sovereign immunity goes beyond the facial question of whether Plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction, the court construes it to be a (12)(b)(1) *factual* challenge to the very existence of subject matter jurisdiction. This status means that the court:

> may proceed as it never could under [Rule] 12(b)(6) or [Rule] 56. Because at issue in a factual [Rule] 12(b)(1) motion is the trial court's jurisdiction - its very power to hear the case - there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir.1981); *see also Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).   In conducting its subject matter jurisdiction review, the court is "obliged to consider not only the pleadings, but to examine the record as a whole to determine whether [it is] empowered to adjudicate the matter at hand." *National Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir.2003).[3]

## III.   Relevant Facts

The facts which are relevant to this court's subject matter jurisdiction inquiry are not complex.  Plaintiff, who was a Ready Reservist in the United States Air Force Reserve ("USAFR"), entered his reserve obligation on September 21, 2001 for a term of six years, which expired on September 21, 2007.  (Doc. # 16, DEX1).  Plaintiff's initial orders list his duty title as "Intel Applications Craftsman." (Doc. # 16, DEX1).  Although he was initially determined to be a candidate for Officers Training School, he was eventually dropped from consideration and subsequently requested transfer to the USAFR Ready Reserve.  (Doc. # 16, DEX4).  His request was granted.  (Doc. # 16, DEX5).

On May 7, 2007, Plaintiff filed his lawsuit in this case.  (Doc. # 1).  Over four months later, he "received an Honorable Discharge from the United States Air Force releasing him from his military service on September 20, 2007."  (Doc. # 20, at ¶ 39).

Plaintiff's complaint contends that Defendants wrongfully terminated him or breached his enlistment contract by not utilizing him as an Intelligence Analyst and denying him "security

---

[3] Although the Eleventh Circuit has cautioned that, when considering factual Rule 12(b)(1) attacks on subject matter jurisdiction, "[w]here the jurisdictional issues are intertwined with the substantive merits, the jurisdictional issues should be referred to the merits," *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 733 (11th Cir. 1982) (internal citations omitted), that is not the case here.

clearance and schooling to obtain an officer's commission." (Doc. # 1, Counts 1-2; Doc. # 20, at 4). Plaintiff further claims that he was "involuntarily" discharged from the military without the benefit of a Board Hearing or an attorney and thus was denied due process. (Doc. # 1, Counts 3-7). He also alleges that, as a result of the Air Force failing to follow mandatory regulations relating to his discharge, Defendants falsely imprisoned him (Doc. # 1, Counts 8-9), stole his liberty (Doc. # 1, Count 10), held him in involuntary servitude (Doc. # 1, Count 11), and failed to correct his military records (Doc. # 1, Count 12).

## IV.    Substantive Discussion

As intimated above, Defendants' main subject matter jurisdiction argument - and the only argument this court need consider because it is dispositive of all of Plaintiff's claims in this case - is that Plaintiff's claims are barred by sovereign immunity under the principles of *Feres v. United States*, 340 U.S. 135 (1950), and its progeny. Although the United States, through statutes like the Federal Tort Claims Act ("FTCA") and other vehicles, has waived its sovereign immunity to permit certain claims to be brought against it, the *Feres* doctrine is a judicially created exception to that waiver that reestablishes the government's sovereign immunity for claims brought by soldiers for their service-related injuries. *Feres*, 340 U.S. at 159.

In *Feres*, the Supreme Court held that "the Government is not liable under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146. Over thirty years after *Feres* was decided, its doctrine was expanded to bar not only suits under the FTCA, but *all suits* for service-related damages, *Chappell v. Wallace*, 462 U.S. 296, 305 (1983), including claims of non-constitutional violations, *United*

5

*States v. Shearer*, 473 U.S. 52, 59 (1985); *Bivens*[4] actions, *United States v. Stanley*, 483 U.S. 669, 682-83, (1987); and cases brought pursuant to 42 U.S.C. § 1983, *Watson v. Arkansas Nat'l Guard*, 886 F.2d 1004, 1007 (8th Cir.1989).   Moreover, the Eleventh Circuit has expanded the *Feres* doctrine even further to prevent service-related claims for *injunctive* relief:   "cases brought by enlisted personnel against the military for injuries incident to service are nonjusticiable, whether the claims request monetary damages or injunctive relief." *Speigner v. Alexander,* 248 F.3d 1292, 1298 (11th Cir. 2001).   As the law in this Circuit stands now, any and all claims by a soldier for injuries incident to service - regardless of the type of relief sought - are barred by the *Feres* doctrine.

The Supreme Court has made clear that the government's *Feres* immunity is justified, in part, by the need to avoid judicial interference with military discipline and sensitive military judgments. Service-related claims are often "the types of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *United States v. Johnson*, 481 U.S. 681, 690 (1987) (punctuation and citation omitted).   Thus, the very process of a lawsuit - and not just its end result - "disrupt[s] the military regime." *United States v. Stanley*, 483 U.S. 669, 682-83 (1987).

With that purpose in mind, the Eleventh Circuit has developed a three-part analysis to determine whether an injury is incident to service and barred by *Feres*: "(1) the duty status of the service member, (2) the place where the injury occurred, and (3) the activity the serviceman was engaged in at the time of injury."   *Pierce v. United States*, 813 F.2d 349, 352-53 (11th Cir. 1987). In applying those factors, courts are to consider the totality of the circumstances to determine

---

[4] Under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), an individual can seek monetary damages from a federal official for a violation of constitutional rights.

whether the injury was incurred incident to service. *Kitowski v. United States*, 931 F.2d 1526, 1561 (11th Cir. 1991).

The court has carefully considered all three factors of the "incident to service" test as applied to Plaintiff's claims in this case.  As is evident from the parties' briefs and their positions at oral argument, the heart of their dispute concerns the first factor of the tri-part test: whether Plaintiff's duty status at the time his claims arose demonstrates that they are incident to his service.  It is undisputed that Plaintiff's enlistment contract expired in September 2007, and that two months after this lawsuit was filed, Plaintiff "received an Honorable Discharge from the United States Air Force releasing him from his military service on September 20, 2007." (Doc. # 20, at ¶ 39).  Although Plaintiff acknowledges that the military *officially* discharged him after his claims arose (and even after this lawsuit was filed), he contends that his *de facto* release from service occurred much earlier. According to Plaintiff, years before his formal discharge, he was "involuntarily" discharged from the military when Defendants allegedly breached his enlistment contract.  (Doc. # 20, at 10-15).  Thus, he asserts that his claims in this case are not incident to service because, post-breach, he was no longer on active duty.

Plaintiff's contention that his claims against Defendants arose when he was not in service are not to be taken lightly.  "It is well-established that *Feres* applies only to soldiers, and therefore does not bar civilian suits along some portion (probably a large portion) of the incident-to-service spectrum." *McMahon v. Presidential Airways, Inc.*  502 F.3d 1331, 1351-1352 (11th Cir. 2007). Nevertheless, this court need not decide whether Plaintiff was a civilian or a soldier at the time his claims accrued, because this Circuit has already spoken to the very circumstances present in this

case.  In *Garrett v. U.S.,* 625 F.2d 712 (5th Cir. 1980)[5] the former Fifth Circuit considered the application of the *Feres* doctrine to a soldier whose enlistment contract no longer applied, but who had yet to be officially discharged from service.  The court affirmed the district court's decision to dismiss, under *Feres*, Garrett's claims against the United States for illegally and negligently detaining him in the United States Marine Corps for two months between the expiration of his enlistment and his formal discharge.  *Garrett,* 625 F.2d at 712-13.  Although Garrett argued that *Feres* did not apply to his circumstances because he was not on active duty after his enlistment contract became invalid, the court disagreed, emphasizing that "[s]ervice in the military, whether by enlistment or otherwise, creates a status which is not and cannot be severed by breach of contract unfortified by a proper authoritative action."  *Garrett,* 625 F.2d at 712-13.  Thus, the court set forth a bright line test to be applied in situations like the one in this case -- "one who has not been discharged is still a member of the armed services on active duty," and thus any injuries arising out of his military service during the period before his official discharge are barred by *Feres.  Garrett,* 625 F.2d at 713.

As this Circuit has emphasized, it is not for an enlistee to simply declare himself "discharged" or free from duty because he believes the government breached his contract or otherwise wronged him.  Indeed, the caselaw gives this court no discretion in that matter --  because Plaintiff was not officially discharged until September 2007, he was on active duty not only at the time his claims arose, but for another four months after his lawsuit was filed in this court.  Thus, Plaintiff's claims that he was involuntarily discharged prior to that time or should have been discharged prior to that time have no bearing on the *Feres* question of whether his claims are incident to service.

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Having determined that the first *Pierce* factor clearly demonstrates that Plaintiff's claims were incident to his service, the other two factors can be disposed of in short order because they are not colorably in dispute.  As Plaintiff's complaint indicates, the alleged wrongdoing of Defendants - wrongful termination, breach of enlistment contract, failure to utilize Plaintiff as an Intelligence Analyst, denial of "security clearance and schooling to obtain an officer's commission," involuntarily discharge without the benefit of a Board Hearing or an attorney, denial of due process, false imprisonment, involuntary servitude, and failure to correct military records[6] – necessarily occurred at a time and place when Plaintiff was engaged in the performance of his service duties to Defendants.  This is not a case in which Plaintiff was in pursuit of a personal matter when his

_____

[6] In his brief in opposition to Defendants' motion to dismiss, Plaintiff characterizes his claims as follows:

> Defendants United States Air Force, et al. established a legal contract whereby the Plaintiff would use his skills, knowledge and talent as an Intelligence Analyst, and in return the U.S. Air Force would pay the costs of schooling and obtaining the necessary security clearance so that he might be eligible to carry out his responsibilities to the U. S. Air Force under the contract. In addition, it was established by contract that the Plaintiff would be assigned to an officer's billet and the Plaintiff would be sent to school so that he might qualify for a commission as an officer in the U.S. Air Force. The complaint alleges that the U.S. Air Force refused to honor the major material elements of the agreement by refusing to pay for the security clearance and school for security and officer's training resulting in a material breach of contract. The U. S. Air Force then effectively ridded itself of the Plaintiff by forcing him into employment categories which had no relationship to the agreement into which both parties entered willingly and knowingly.
> ....
>
> In addition to the Plaintiff's Material Breach of Contract and Wrongful Termination, the complaint cites violations of the Plaintiff's Constitutional rights, in particular Due Process, as well as False Imprisonment, Involuntary Servitude, and Failure to Correct Records.

(Doc. # 20, at 20, 21).

injuries occurred, or where the correlation between his alleged injuries and his service is tenuous. Indeed, his alleged injuries are not just related to his service - from Plaintiff's perspective, they *were* his service.  Thus, the court finds that the final factors of the tri-part test (the place where the injury occurred and the activity the serviceman was engaged in at the time of injury) are undoubtedly satisfied here, and Plaintiff's claims are due to be dismissed for lack of subject matter jurisdiction. *Pierce*, 813 F.2d at 352-53.

## V.    Conclusion

The totality of the circumstances of Plaintiff's alleged injuries - viewed in light of this Circuit's tri-part test - clearly indicate that all of Plaintiff's claims are incident to his service. Accordingly, Defendants retain their sovereign immunity from suit, and this court lacks subject matter jurisdiction over Plaintiff's claims.   A separate dismissal order will be entered.

Nevertheless, although the binding caselaw insulates the government from Plaintiff's claims in this case, that does not render his service to this Nation meritless.  Indeed, the court wishes to specifically recognize Plaintiff for his devotion to country.  At oral argument, which notably was held three days after we honored past and present members of our Armed Forces on Veteran's Day, Plaintiff expressed his chagrin at "never having been thanked" properly for the significant time he spent in the United States Air Force.  Certainly all those who have served this Nation as part of our Armed Forces are due our heartfelt gratitude for their devotion to duty and love of country, and therefore, on behalf of this court, the undersigned honors and thanks Plaintiff for his service.

**DONE** and **ORDERED** this ___12th___ day of February, 2008.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE